B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT | Northern District of Texas | PROOF OF CLAIM |
|---|---|---|

Name of Debtor: Daniel Duane Ferry

Case Number: 10-30078

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
CashNetUSA

Name and address where notices should be sent:
200 W. Jackson Blvd Suite 1400
Chicago, IL 60606

Telephone number:
(312) 676-1624

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)

Filed on: _____

Name and address where payment should be sent (if different from above):
Same As Above

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 1,662.57

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Money Loaned
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 3829

   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe:

   Value of Property: $ _____   Annual Interest Rate ___ %

   Amount of arrearage and other charges as of time case filed included in secured claim,
   if any: $ _____   Basis for perfection: _____

   Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim.

   ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

   ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

   ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

   ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

   ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

   ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

   **Amount entitled to priority:**
   $ _____

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

Date: 02/17/2010

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

\S\ Iesha Cleveland

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



## CashNetUSA.com
Make Anyday Payday

**Itemized List of Claim for Case Number**     10-30078
**Debtor's Name:** Daniel Ferry

Date Bankruptcy Filed:     1/2/2010

Loan Date:     7/17/2009
Loan Number:     12607700

| | |
|---|---:|
| Amount of Loan: | $1,300.00 |
| Fee Amount: | $325.00 |
| Nsf/late Charges: | $30.00 |
| Lender Interest: | $7.57 |
| Fee credit amount: | $0.00 |
| Fee Discount: | $0.00 |
| Payments Made: | $0.00 |
| **TOTAL AMOUNT OF CLAIM:** | **$1,662.57** |

Signed Contract

CASH AMERICA NET OF TEXAS, LLC

Disclosure Statement

Texas

Date: July 17, 2009

Daniel Duane Ferry

1014 Fairlawn Dr

Duncanville, TX 75116

We, us and our mean Cash America Net of Texas, LLC, its successors and assigns. You, your and yours mean the Customer(s) signing this Disclosure Statement, jointly and severally if more than one, and their respective heirs, personal representatives, successors and assigns.

**Purpose:** Chapter 393 of the Texas Finance Code, which regulates credit services organizations, requires a customer to receive a disclosure statement before executing a contract for credit services or paying any fee or other consideration. We are a credit services organization which is registered with the Secretary of State of Texas under Chapter 393 of the Texas Finance Code, and we are not required to be licensed as a regulated-loan arranger under Texas law. You may request to inspect our registration Statement.

**Description and Cost of CSO Services:** If you enter into a Credit Service Contract with us, for a fee of $325.00 (the "CSO Fee"), we agree to use our best efforts to do the following: (1) arrange for you a single payment loan for a term not to exceed 45 days at a rate of interest of 10% per annum from a third-party lender (the "Loan"); (2) assist you in preparing and completing the information and documents that the third-party lender requires you to submit in order to obtain a Loan; and (3) accept payment of amounts due under the Loan and forward same to lender. Additionally, if you obtain a Loan we will guarantee your payment obligations under the Loan, not to exceed the principal, fees and interest owed at time of default. Unless you cancel the Credit Services Contract within 3 days from the date it is signed, our CSO Fee is earned on the day you receive and accept a loan and receive the funds from the loan. You will not owe us or be charged a CSO Fee unless we are unable to arrange a loan for you. The CSO Fee will be rolled into the loan amount. As such, the total amount you finance will consist of the amount paid directly to you plus the CSO Fee. You will pay the CSO Fee from the proceeds of the Loan.

We will not make you a loan. As set forth above, one of our obligations will be to use our best efforts to help you obtain a loan from a third-party lender at a rate of interest of 10% per annum. WE ARE NOT A LENDER OR A FIDUCIARY OF THE THIRD-PARTY LENDER. ANY SERVICES WE MAY PROVIDE OR THIRD-PARTY LOAN WE ARRANGE MAY NOT BE AT THE BEST AVAILABLE RATES OR TERMS. YOU ARE FREE TO LOOK ELSEWHERE. YOU ARE NOT OBLIGATED TO ACCEPT A LOAN WE ARRANGE. IF YOU DO NOT ACCEPT A LOAN WE ARRANGE, YOU WILL NOT OWE US ANY FEE.

**Consent to Electronic Communications:**

The following terms and conditions govern electronic communications in connection with this Contract and the transaction evidenced hereby (the "Consent"). By electronically signing this Contract by clicking the "I AGREE" button below, you are confirming that you have agreed to the terms and conditions of the Consent and that you have downloaded or printed a copy of this Consent for your records. You agree that:

- Any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, this Disclosure Statement, a Credit Services Contract should you choose to enter into one, loan agreements with third-party lenders, Truth in Lending disclosures set forth in such loan agreements with third-party lenders, this Consent, change-in-term notices, fee and transaction information, statements, delayed disbursement letters, notices of adverse action, state mandated brochures and disclosures, and any transaction information ("Communications"), may be sent to you electronically by posting the information at our web site, www.cashnetusa.com, or by sending it to you by e-mail.
- We will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so.
- You may obtain a copy of any Communication by contacting us at 200 W. Jackson Blvd, Suite 2400, Chicago, IL 60606, or by calling us at 888.801.9075. You also can withdraw your consent to ongoing electronic communications in the same manner, and ask that they be sent to you in paper or non-electronic form. If you choose to receive Communications in paper or non-electronic form, we may elect to terminate this Contract.
- You agree to provide us with your current e-mail address for notices at the address or phone number indicated above. If your e-mail address changes, you must send us a notice of the new address by writing to us or sending us an e-mail, using secure messaging, at least five (5) days before the change.
- In order to receive electronic communications in connection with this transaction, you will need a working connection to the Internet. Your browser must support the Secure Sockets Layer (SSL) protocol. SSL provides a secure channel to send and receive data over the Internet through HS encryption capabilities. Netscape 4.7+ and above and Microsoft Internet Explorer 5.01+ and above support this feature. You will also need either a printer connected to your computer to print disclosures/notices or sufficient hard drive space available to save the information (e.g., 1 megabyte or more). To download transaction information into Quicken or Microsoft Money, you will need the equipment and software required by their respective operating instructions. We do not provide ISP services. You must have your own Internet service provider.
- We may amend (add to, delete or change) these terms by providing you with advance notice.

BY ELECTRONICALLY SIGNING THIS DISCLOSURE STATEMENT BY CLICKING THE "I AGREE" BUTTON BELOW, YOU ARE CONFIRMING THAT: (1) YOUR SYSTEM MEETS THE REQUIREMENTS SET FORTH ABOVE; (2) YOU AGREE TO RECEIVE COMMUNICATIONS ELECTRONICALLY; AND (3) YOU ARE ABLE TO ACCESS AND PRINT OR STORE INFORMATION PRESENTED AT THIS WEBSITE.

**Claims Against Surety Bond:** We have filed a surety bond in the amount of $10,000 with the Secretary of State of Texas under Chapter 393 of the Texas Finance Code. The surety bond is held by the surety shown below. Under Chapter 393 of the Texas Finance Code, the surety bond is in favor of a person damaged by a violation of that chapter and the State of Texas for the benefit of such person. A person making a claim against a surety bond for a violation of the chapter may file suit against the organization and the surety. A surety is liable only for actual damages, reasonable attorneys'fees, and court costs awarded under Section 393.503(a) of the Texas Finance Code. The aggregate liability of a surety for an organization's violation of the chapter may not exceed the amount of the surety bond. We are required to maintain the surety bond until the second anniversary of the date on which we cease operating as a CSO.

**Surety Bond Information**

Surety Bond Company: Fidelity and Deposit Company of Maryland

Address of Surety Company: 12222 Merit Dr., Ste. 700, Dallas, Texas 75251

**Governing law:** This Credit Services Disclosure Statement shall be governed by laws of the State of Texas, and any Credit Services Contract entered into will be governed by the laws of the State of Texas, except that the Arbitration and Waiver of Jury Trial Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16.

**Warning:** Our credit services and any loan by a third-party lender that we arrange are NOT intended to meet long-term financial needs. They should only be used to meet immediate short-term cash needs. Repeated or frequent use can create serious financial hardships. You should evaluate the costs and benefits of all alternatives before entering into a Credit Services Contract. Other forms of short-term credit services or loans that may be less expensive include credit services from another credit service organization, a loan from another institution or from family or friends, a credit card cash advance, an account with overdraft protection, or a salary advance.

**Nonprofit Credit Counseling**

You may consider other ways to obtain credit services. Certain nonprofit entities provide credit counseling services to consumers. For more information, check the local telephone directory under "Credit & Debt Counseling."

**Consumer Credit File Rights Under State and Federal Law**

You have certain rights under the Fair Credit Reporting Act (15 U.S.C.A. § 1681 et seq.) and Chapter 20 of the Texas Business Commerce Code. Under the Fair Credit Reporting Act, you have the right to obtain a copy of your credit file from a consumer credit reporting agency. You may be charged a reasonable fee not exceeding eight dollars ($8). There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The consumer credit reporting agency must provide someone to help you interpret the information in your credit file. You have a right to dispute inaccurate information by contacting the consumer credit reporting agency directly. However, neither you nor any credit repair company or credit services organization has the right to have accurate, current, and verifiable information removed from your credit report. Under the Federal Fair Credit Reporting Act, the consumer credit reporting agency must remove accurate, negative information from your report only if it is over seven years old. Bankruptcy information can be reported for 10 years. If you have notified a credit reporting agency in writing that you dispute the accuracy of information in your credit file, the consumer credit reporting agency must then reinvestigate and modify or remove inaccurate information. The consumer credit reporting agency may not charge a fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the consumer credit reporting agency.

If reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the consumer credit reporting agency to keep in your file, explaining why you think the record is inaccurate. The consumer credit reporting agency must include your statement about disputed information in any report it issues about you.

You have a right to cancel the Credit Services Contract for any reason within three working days from the date you signed it. If for any reason you do cancel the Credit Services Contract during this time, you do not owe any money to us. You have a right to sue a credit services organization if it misleads you.

## PRIVACY POLICY

This policy replaces any privacy policy previously delivered to you or appearing on our website, any transaction agreement, application, loan document or any other document previously delivered to you. If there are conflicts between this Policy and any other policy we have delivered to you, the terms of this Policy shall control until revised.

Cash America Net Holdings, LLC ("CashNetUSA") is serious about protecting your privacy. This notice is provided to you on behalf of CashNetUSA and its parent company, Cash America International, Inc., and their respective family of companies including CashNetUSA, its parent company, Cash America International, Inc., and all of their respective subsidiaries and affiliates, (hereafter collectively referred to as the "CashNetUSA Related Companies," "we," "our," or "us"). The CashNetUSA Related Companies include, but are not limited to: CashNetUSA, Cash America International, Inc., and all of their respective subsidiaries and affiliates, including those that operate under the trade names CashNetUSA, Cash America Net, Cash America, Cash America Pawn, Cashland, SuperPawn, Cash America Payday Advance, Primary Pay Card (or variations thereof), or company-owned Mr. Payroll locations. "You" or "Your" means you as a participant in or as a user of the products and/or services offered by a CashNetUSA Related Company.

All information transmitted, printed or otherwise submitted to us shall be deemed to be our property and we shall be free to use such information for any lawful purpose described herein, and for other purposes as required or permitted by law.

Please read this notice carefully. This notice provides important information about the way we collect, share, and protect your information. This privacy policy applies to anyone who applies for or uses our products or services, or visits our websites, including, but not limited to, current and former customers. We must notify you about our sharing practices when you establish a customer relationship and each year while you are a customer. A customer relationship begins when you obtain a financial product or service from us. A customer relationship terminates when you pay off a transaction in full.

### Information We Collect

We collect personally identifiable information, including, but not limited to, non-public personal information, as well as other types of personally identifiable information from you and from other sources as described herein (collectively, "Your Information"). Our primary goal in collecting Your Information is to provide you with efficient, accurate, and customized financial products and services. Your Information also helps us personalize and improve your customer experience with us. We collect and/or track the following types of information:

- Information we receive from you on applications or other forms, such as transaction documents, sales documents, online forms, e-mails, registration forms, surveys, or other documents or submissions related to the products and services we provide, including your name, address, telephone number, social security number, driver's license number, email address, employment information, demographic information, bank account information, and information about your assets, debts and income;
- Information about your transactions with us, our affiliates, or others, such as your account history, transaction balances, payment history, overdraft history, parties to transactions, and your reasons for doing business with us;
- Information we receive from third parties, such as consumer reporting agencies and other lenders, regarding your credit worthiness and credit history, and to verify your identity;
- Information we obtain to verify representations made by you, such as your employment history or income;
- Information obtained from specialized marketing information firms, such as household demographics;
- Information obtained from Web page http headers (home server domain names, IP address, type of client computer, and type of Web browser);
- Information, user specific or aggregate, we receive from our web pages recording visitor's access;
- Information you provide when you contact our customer service department; and
- Information you provide to us when you communicate with us via email.

### How We Use Your Information

We use Your Information to:

- provide you with products and services you request;
- Offer you additional products or services, from us or from others, that may be of interest to you;
- Comply with all reporting and other legal requirements;
- Enhance your experience at our websites;
- Process payments and update account records;
- Analyze customer demographics, payment histories, and preferences;
- Conduct statistical analyses; and
- Provide our advertisers with editorial or feedback information.

### Sharing Your Information

(Customers that reside in California, North Dakota or Vermont should refer to the state-specific notices provided at the end of this policy)

The CashNetUSA Related Company delivering this Privacy Policy to you (the "CashNetUSA Provider") may share or sell Your Information with any other CashNetUSA Related Company (collectively, its "Affiliated Companies") and with other companies with whom any CashNetUSA Related Company does business ("Non-Affiliated Third Parties") as permitted by law and described in this Privacy Policy. These Affiliated Companies and Non-Affiliated Third Parties may be (1) financial service providers, such as mortgage bankers, mortgage brokers, consumer lenders, small loan lenders, tax refund anticipation loan lenders, loan brokers, deferred deposit providers, check cashers, supervised lenders, delayed deposit providers, deferred presentment providers, collection agencies, consumer reporting agencies, banks, credit card providers, debit card providers, store valued card providers, insurance agencies, bill payment agencies, ATM providers, pawn and title pawn providers, automobile dealers, automobile financing providers, automobile leasing providers, money transfer and remittance providers, sellers and remitters of money orders, insurance services providers, and financial service provider holding companies, or agents, contractors, or representatives of any of the foregoing; (2) non-financial companies, such as retailers, tax preparers, payroll service providers, advertisers, marketing companies, lead generators, advertisers on our websites, companies or individuals that do industry-related research, surveys or polls, automobile dealers, and any person who offers a non-financial product or service, and holding companies, or agents, contractors, or representatives of any of the foregoing; and (3) other businesses, such as non-profit organizations, trade associations, and industry analysts or agents, contractors, or representatives of any of the foregoing.

Affiliated Companies and Non-Affiliated Third Parties may use Your Information for any legal purpose, including, but not limited to, developing and promoting new or joint products, improving existing products and services, and contacting you to offer products and services that may be of interest to you. We may also disclose Your Information, as described above, to companies who perform services on our behalf or to other financial institutions with which we have joint marketing agreements.

The CashNetUSA Provider may also disclose Your Information to Affiliated Companies and Non-Affiliated Third Parties that provide services to us ("Service Providers"). We contract with service providers to perform certain functions on our behalf. Examples include database providers who assist in identity verification, credit scoring companies, magazine publishers, retailers, and direct marketers. Their access is limited only to the personal data needed to perform their functions, and only for the purpose of performing those functions, and they are prohibited from using or disclosing Your Information for other purposes.

We also may release Your Information if it becomes necessary for compliance with the law or to protect the rights, property, or safety of our websites, our users, or third parties. We reserve the right to release such personal data to law enforcement or other governmental officials as we, in our sole and absolute discretion, deem necessary to comply with the law. In addition, we reserve the right to use and disclose Your Information that is not in individually identifiable form as we deem appropriate in our sole discretion.

### Notice of Furnishing Negative Information

> WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.

### Automatic Information and Cookies

We may receive and store certain types of information whenever you interact with our websites. For example, like many websites, we use "cookies" to obtain certain types of information when your web browser accesses our websites and when you login, such as: your name and your email address. Cookies are pieces of information that are transferred to your computer's hard drive via your web browser. They allow us to provide you with a more convenient and personalized shopping experience by recording information about your preferences.

A web browser is usually set to accept cookies automatically but can be changed to decline them. The Help section of the toolbar on most web browsers will tell you how to prevent your browser from accepting new cookies, how to have the web browser notify you when you receive a new cookie or how to disable cookies altogether. In most cases, a visitor may refuse a cookie and still fully navigate our websites.

### Your Right to Limit the Sharing of Your Information

In some circumstances, you have the right to direct the CashNetUSA Provider to not share Your Information with its Affiliated Companies and/or Non-Affiliated Third Parties (i.e. "Opt-Out"). Please note that even if you Opt-Out, the CashNetUSA Provider may still share Your Information with its Affiliated Companies and Non-Affiliated Third Parties as permitted or required by law. Also, the CashNetUSA Provider may share information it collects regarding its transactions and experiences with you with its Affiliated Companies. The CashNetUSA Provider may also share all information it collects about you with Affiliated Companies and Non-Affiliated Third Parties: to facilitate providing our services to you, to administer our business, in order to receive services from those companies, as permitted under joint marketing agreements, and as otherwise permitted or required by law.

The CashNetUSA Provider is delivering this notice to you on behalf of itself and all other CashNetUSA Related Companies. You may limit how the CashNetUSA Provider's Affiliated Companies use Your Information the CashNetUSA Provider shares with them. Federal law gives you the right to limit some but not all marketing from the CashNetUSA Provider's Affiliated Companies. You may limit a CashNetUSA Provider's Affiliated Companies from marketing their products or services to you based on Your Information that they receive from the CashNetUSA Provider. This information includes your income, your account and payment history, and your credit history, report or score.

### Opt-Out Information and Notice

To limit the CashNetUSA Provider's sharing of Your Information with Affiliated Companies and Non-Affiliated Third Parties, as described above, contact us:

- On the web: www.cashnetusa.com, or
- By email: optout@cashnetusa.com.

Unless we hear from you, we can begin sharing Your Information thirty (30) days from the date we first deliver this Notice to you. However, you may Opt-Out at any time by contacting us. Once we receive your Opt-Out request, we will stop sharing this information as soon as reasonably practicable. Your Opt-Out request will remain in effect until you notify us otherwise in writing.

### How We Protect Your Information

We restrict access to Your Information to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard Your Information.

### Our Right to Contact You

We reserve the right to contact you regarding your account status and changes to subscriber agreements, our privacy policy, or any other policies or agreements relevant to you. By visiting our websites, you understand and agree that we may contact you at the phone number or email address you provide to us through our websites or on your transaction agreements, applications, loan documents or any other document to assist you with your product or to discuss other products and services that a CashNetUSA Related Company may provide for you.

### We Do Not Collect Data from Children

The information and services provided by us or by our affiliates, sponsors, and advertisers, are not intended to be viewed by children (under 18 years old). No information collected from children is knowingly collected or used for any purpose whatsoever, including marketing and promotional purposes, either inside or outside the CashNetUSA Related Companies.

### Our Right to Change This Policy

We reserve the right to change this policy at any time by either providing you a revised copy of the policy, or notifying you of the existence and location of the new or revised privacy policy.

### Notice to California Residents

Pursuant to state law, the CashNetUSA Provider may not share information it collects about you with its Affiliated Companies or with Non-Affiliated Third Parties, except in the limited circumstances permitted under state law, or if you give us your permission.

California Civil Code Section 1798.83, also known as S.B. 27, allows California residents to request certain information regarding our disclosures in the prior calendar year, if any, of personally identifiable information to third parties for their own direct marketing purposes. To make such a request, please contact us at www.cashnetusa.com or write to us at attn: Customer Service, 200 W. Jackson Blvd., 14th Floor, Chicago, Illinois 60606-6941.

### Notice to North Dakota Residents

Pursuant to state law, we will only share information with our service providers and with third parties as required or permitted by law, or if you give us your permission.

### Notice to Vermont Residents

The CashNetUSA Provider will not disclose information about you with its Affiliated Companies or with Non-Affiliated Third Parties, other than as required or permitted by law, without your express permission.

WARNING: IT IS IMPORTANT TO FILL OUT THIS FORM ACCURATELY. KNOWINGLY MAKING A FALSE STATEMENT ON A CREDIT APPLICATION IS A CRIME.

Federal law provides important protections to active duty members of the Armed Forces and their dependents. To ensure that these protections are provided to eligible applicants, we require you to acknowledge ONE of the following statements:

I AM NOT a member of the military or the spouse/dependent of a military member. Specifically, I AM not, or I AM not the spouse or dependent of, a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or fewer, or serving on Active Guard and Reserve duty. (Dependents include the member's spouse, child under the age of eighteen years old or an individual for whom the member provided more than one-half of their financial support for 180 days preceding today's date.)

I am a member of the military or the spouse/dependent of a military member. Specifically, I AM, or I AM the spouse or dependent of, a regular or reserve member of the Army, Navy, Marine Corps, Air Force, or Coast Guard, serving on active duty under a call or order that does not specify a period of 30 days or fewer, or serving on Active Guard and Reserve duty. (Dependents include the member's spouse, child under the age of eighteen years old or an individual for whom the member provided more than one-half of their financial support for 180 days preceding today's date.)

3829

Signature block:

(-- signature stored on file --)

Contract: [SHA] 86e88be008a8497b2f73d623c9d49bff6bc905de
ACH Authorization: [SHA] c244f5943906c501f023e321254bff311200ab1a

CashNetUSA Signature block:
Signed at: 02:35 AM on July 17, 2009
Signed by: Timothy Ho, President, CashNetUSA

[SHA] 0297153b3c7b0014a86 0a89b036303abcfec59b6(**** VERIFIED ****)
[SHA] 86e88be008a8497b2f73d623c9d49bff6bc905de

Signed Contract

CASH AMERICA NET OF TEXAS, LLC

Credit Services Contract

Texas

Date: July 17, 2009

Daniel Duane Ferry

1014 Fairlawn Dr

Duncanville, TX 75116

We, us and our mean Cash America Net of Texas, LLC, its successors and assigns. You, your and yours mean the Customer(s) signing this contract (the "Contract"), jointly and severally if more than one, and their respective heirs, personal representatives, successors and assigns.

ARBITRATION AND WAIVER OF JURY TRIAL AGREEMENT: BEFORE SIGNING THIS CONTRACT, YOU SHOULD CAREFULLY REVIEW THE ARBITRATION AND WAIVER OF JURY TRIAL PROVISIONS ATTACHED AS SCHEDULE "A" HERETO (HEREINAFTER REFERRED TO AS THE "ARBITRATION AND WAIVER OF JURY TRIAL AGREEMENT"). THE ARBITRATION AND WAIVER OF JURY TRIAL AGREEMENT PROVIDES THAT ALL CLAIMS ARISING FROM OR RELATING TO THIS CONTRACT OR ANY OTHER AGREEMENT THAT YOU AND WE HAVE EVER ENTERED INTO MUST BE RESOLVED BY BINDING ARBITRATION IF THE PERSON OR ENTITY AGAINST WHOM A CLAIM IS ASSERTED ELECTS TO ARBITRATE THE CLAIM. THUS, IF THE PERSON OR ENTITY AGAINST WHOM YOU ASSERT A CLAIM ELECTS TO ARBITRATE THE CLAIM, THEN YOU WILL NOT HAVE THE FOLLOWING IMPORTANT RIGHTS: (1) YOU WILL NOT HAVE A RIGHT TO HAVE A TRIAL BY JURY RESOLVE ANY DISPUTE ALLEGED AGAINST US AND/OR RELATED THIRD PARTIES; (2) YOU WILL NOT HAVE A RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS COURT, RESOLVE ANY DISPUTE ALLEGED AGAINST US AND/OR RELATED THIRD PARTIES; AND (3) YOU WILL NOT HAVE A RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR ANY RELATED THIRD PARTIES.

**Agreement:** You agree to obtain and we agree to provide credit services to you upon the terms set forth in this Contract.

**Description of Services:** For the fee set forth in this Contract, we agree to use our best efforts to do the following: (1) arrange for you a single payment loan for a term not to exceed 45 days at a rate of interest of 10% per annum from a third-party lender ("the Loan"); (2) assist you in preparing and completing the information and documents that the third-party lender requires you to submit in order to obtain a loan; and (3) accept payments of amounts due under the loan and forward same to lender on your behalf. Additionally, if you obtain a Loan we will guarantee your payment obligations under the Loan, not to exceed the principal, fees and interest owed at time of default. We estimate that our services will be completed by the term of the Loan, but in no event later than 180 days from the date of this Contract. You understand that no CSO fee will be owed unless you accept the loan. You acknowledge and agree that the CSO Fee will be rolled into the loan amount. As such, the total amount financed will consist of the amount paid directly to you plus the CSO Fee. You authorize us to retain the CSO Fee from the proceeds of the Loan.

**Guaranty.** We agree to unconditionally guaranty to Lender the prompt payment of principal, fees and interest (accrued as of the date of your default), in the event you default on your payment obligations under the Promissory Note.

**Cost of Your Credit Services.** You agree to pay us a fee (the "CSO Fee") in the amount of $325.00. Unless you cancel this Contract within 3 days from the date the Contract is signed, our CSO Fee is earned on the day you receive and accept a loan and receive the funds from the loan. You will not owe us or be charged a CSO fee unless we are able to arrange a loan for you. You agree to pay the CSO Fee on July 31, 2009 by an ACH transfer from your bank account, as authorized below.

**Other Charges.** In the event that you default on this Contract, you agree to pay our reasonable attorneys' fees if this Contract is referred to an attorney for collection, regardless of whether legal proceedings are actually filed, and all costs and disbursements. You agree that past due amounts you owe you may bear interest at the rate of 10% per annum, subject to legal limits. You agree to pay us a dishonored item fee of $30 with respect to any check, ACH authorization, or any payment device that you provide to us that is dishonored, subject to legal limits.

**The CSO Fee Is Not Interest.** For Federal Truth-in-Lending Act purposes, the CSO Fee is required to be included in the Finance Charge calculation disclosed with any loan in a third-party lender's loan agreement with you. As an example, on a loan in the amount of $1,000, payable in 14 days with interest at 10% per annum, the Amount Financed is $1,000, the Finance Charge is $254.79, which consists of interest in the amount of $4.79 and a CSO Fee of $250, the Annual Percentage Rate is 664.27% and the Total of Payments is $1,254.79.

You understand that this is only an example and that the actual terms and conditions and the fees you will pay will be disclosed by the third-party lender in the loan documents (including a Promissory Note and Federal Truth-in-Lending Disclosures (the "Promissory Note"), under which the Loan will be made (collectively, the "Loan Documents"). You understand that it is your obligation to read the Loan Documents prior to signing them. Even though the CSO Fee must be disclosed as a finance charge by the third-party lender for purposes of federal law disclosures, you understand and acknowledge that the CSO Fee is not interest. You also understand and acknowledge that you will pay the CSO Fee directly to us and not to the third-party lender.

You understand that all or part of our operations might be located inside or outside of Texas. YOU AGREE THAT WE ARE NOT A LENDER OR A FIDUCIARY FOR THE THIRD-PARTY LENDER. YOU UNDERSTAND THAT ANY SERVICES RECEIVED OR THIRD PARTY LOAN OFFERED TO YOU MAY NOT BE AT THE BEST AVAILABLE RATE OR TERMS. YOU Acknowledge AND AGREE THAT (1) YOU ARE NOT OBLIGATED TO ACCEPT A LOAN ARRANGED BY US; (2) IN THE EVENT YOU ACCEPT A LOAN ARRANGED BY US, THE TERMS AND CONDITIONS UNDER WHICH THE LOAN WILL BE MADE WILL BE GOVERNED BY THE LOAN DOCUMENTS; AND (3) WE WILL NOT BE A PARTY TO THE LOAN DOCUMENTS.

**Automated Clearing House ("ACH") Authorization.** You acknowledge and agree that we will accept payment from you under the Loan Documents to be forwarded to the Lender. You authorize us or our agent to initiate an ACH debit to your checking account ("Account") at your bank ("Bank") for any amount you owe under this Contract or any Loan Documents. You understand that we will debit the amount due under the Loan Documents as specified in this Contract and the Loan Documents on the scheduled payment due date. You will maintain a balance of available funds in your Account at least equal to the amount due and owing under this Contract and the Loan Documents. If there are insufficient funds on deposit in your Account to effect an ACH debit entry on the scheduled payment due date, you agree to pay us a $30.00 NSF charge, which we may collect via ACH debit entry to Your Bank Account. You voluntarily authorize us, and our successors and assigns, to initiate a debit entry to your Account for payment of this fee. You understand that your Bank may impose charges for each ACH debit that is not honored by your Bank. You are not authorizing us to initiate ACH debits on your Account to recur at substantially regular intervals. However, we or our agent may resubmit an ACH debit up to two times if the debit is not honored by your Bank. You agree that an ACH debit authorized under this Contract may be combined with an ACH debit that you authorize your third-party lender to make with regard to your loan. The Automated Clearing House ("ACH") Authorizations set forth in this Credit Services contract are to remain in full force and effect for this transaction until your indebtedness to us and your lender for up to the Total of Payments, plus any NSF fee incurred, is fully satisfied. You may only revoke the above authorizations by contacting us directly, and only after you have satisfied your indebtedness to both us and your lender.

**CSO Authority.** You authorize us to: (1) call you during reasonable hours at home or work to remind you when your payment is due on any loan; (2) exchange nonpublic personal information about you with the third-party lender to arrange any extension of payment that may be necessary until your Loan is paid in full; (3) receive and remit payments on behalf of you and the third-party lender; (4) communicate with you in the event of default on the loan as allowed by law including calling you, communicating with you in writing or via email, or communicating with your personal contacts whom you identified in your credit services application to acquire location information; and (5) act as special, limited agent for the third-party lender in connection with the handling of the loan.

**Cooperation:** You agree to cooperate with us regarding our services and to provide such information and documents as we reasonably request from time to time.

**Background Information About Credit Service Organization:** You understand that we are registered with the Secretary of State of Texas as a credit services organization under Chapter 393 of the Texas Finance Code, but not subject to Chapter 342/regulated-loan licensing in accordance with Texas Finance Code § 342.005. Our principal place of business and registered agent for service of process are shown below.

Principal Place of Business    Registered Agent
200 West Jackson Blvd          Capitol Corporate Services, Inc.
Suite 2400                     800 Brazos, Suite 1100
Chicago, IL 60606              Austin, TX 78701

**Updated Information:** You agree to notify us promptly of an address change or any material change in your financial condition. You agree to furnish us such updated financial information and other information as we may reasonably request from time to time.

**Credit Information:** You agree that we may obtain your credit report and that we may disclose your credit information to others (such as credit bureaus, credit service organizations, lenders, and financial institutions) about the status and history of your agreement with us, or when necessary or helpful in completing a transaction, or when investigating a loss or potential loss. YOU UNDERSTAND THAT YOUR FAILURE TO SATISFY YOUR OBLIGATIONS CAN RESULT IN NEGATIVE CREDIT INFORMATION ABOUT YOU.

**Customer Representations.** You represent and warrant to us that all statements made in your most recent CSO and loan application to the third-party lender remain true, complete, and correct as of the date hereof. You represent that an account is open in your name at the financial institution shown on your application and that you will not close such account. You further represent and warrant to us that you are not in voluntary or involuntary bankruptcy and are not anticipating filing a bankruptcy proceeding of any type. You understand that we are agreeing to provide you with credit services under this Contract in reliance on the truth of these representations.

**Warning. Credit services provided by a credit services organization and any loan made by a third-party lender are NOT intended to meet long-term financial needs. This transaction should only be used to meet immediate short-term cash needs.** Repeated or frequent use can create serious financial hardships. You should evaluate the costs and benefits of all alternatives before entering into this Contract. Other forms of short-term credit services or loans that may be less expensive include credit services from another credit service organization, a loan from another institution or from family or friends, a credit card cash advance, an account with overdraft protection, or a salary advance.

**Other Provisions:** This Contract constitutes the entire agreement between the parties, and to the extent permitted by law, no modification or amendment of this Contract shall be effective unless in writing and signed by you and us. You may not transfer your rights under this Contract without our prior written consent. We may transfer our rights, titles and interests under this Contract if we so choose. Paragraph

headings are for convenience only. To the extent permitted by law, if any provision of this Contract is invalid or unenforceable, such offending provision, to the maximum extent permitted by law, shall be reformed if practicable so as to achieve its intended purpose and shall not affect the remaining provisions of this Contract. Except for the Arbitration and Waiver of Jury Trial Agreement attached hereto as Schedule "A," which shall be governed by the Federal Arbitration Act (see paragraph 7 of the Arbitration and Waiver of Jury Trial Agreement), this Contract shall be governed by the laws of the State of Texas.

SCHEDULE "A"

Arbitration is a process in which persons with a dispute(s): (a) agree to submit their dispute(s) to a neutral third person (an "arbitrator") for a decision; and (b) waive their rights to file a lawsuit in court to resolve their dispute(s). Each party to the dispute(s) has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute(s), which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:

Scope. For purposes of this Arbitration Provision the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement (including the Arbitration Provision), the information you gave us before entering into this Agreement, including your application, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all data breach or privacy claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

Court and Class Action Waivers. You acknowledge and agree that by entering into this Arbitration Provision:

(a) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A COURT OF LIMITED JURISDICTION (e.g., small claims court), RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and
(b) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

No Class Arbitration. Except as provided in the Small Claim Disputes paragraph below, all disputes, including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION. THE ARBITRATOR SHALL ALSO NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

Process. Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to the arbitrator's rules. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within 20 days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to the dispute will be governed by the rules and procedures of the arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Agreement, including the Arbitration Provision. You may get a copy of the rules and procedures by contacting the arbitration organization listed above.

Fees/Awards/Appeals. Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, in the county where this Agreement was signed, or in such other place as ordered by the arbitrator or required by law. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision in your favor awarding monetary damages and the award is less than the maximum amount allowed to be awarded in the state's court of limited jurisdiction, then your award will be automatically increased to $100 more than that maximum amount. Regardless of whether the arbitrator renders a decision or an award in your favor resolving the dispute, you will not be responsible for reimbursing us for your portion of the Arbitration Fees. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction. Either party may appeal the arbitrator's decision within 30 days to a single arbitrator or a three-arbitrator panel from the same arbitration organization originally chosen, which shall review the award de novo (without regard to the original decision). If you decide to appeal the decision to a single arbitrator, then we will pay your portion of the Arbitration Fees associated with the appeal. If you decide to appeal the decision to a three-arbitrator panel, then you will be responsible for paying the difference in Arbitration Fees between a single arbitrator and a three-arbitrator panel.

Small Claim Disputes. All parties, including related third parties, shall retain the right to seek adjudication in the state's court of limited jurisdiction for disputes within the scope of that court's jurisdiction. Any dispute, which cannot be adjudicated in that court, shall be resolved by binding arbitration. Any appeal of a judgment from that court shall be resolved by binding arbitration.

Interstate Commerce. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Texas.

Binding Effect. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been prepaid, paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

Severability. If any portion of this Arbitration Provision is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Provision, unless the provision precluding the arbitrator from conducting a class arbitration as set forth in the No Class Arbitration paragraph is deemed invalid or unenforceable, in which case this entire Arbitration Provision shall be deemed void.

OPT-OUT PROCESS. You may choose to opt out of this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing postmarked within fifteen (15) calendar days of the date of this Agreement at the following address: Cash America Net of Texas, Attn: General Counsel, 1600 W. 7th Street, Fort Worth, Texas 76102. Your written notice must include your name, address, social security number, the date of this Agreement, a statement that you wish to opt out of the Arbitration Provision and must not be sent with any other correspondence. Indicating your desire to opt-out of this Arbitration Provision in any manner other than as provided above is insufficient notice. Your decision to opt out of this Arbitration Provision will not affect your other rights or responsibilities under this Agreement, and applies only to this Arbitration Provision and no prior or subsequent Arbitration Provision to which you and we have agreed.

CANCELLATION NOTICE: YOU, THE CUSTOMER, MAY CANCEL THIS CONTRACT AT ANY TIME BEFORE MIDNIGHT OF THE THIRD DAY AFTER THIS CONTRACT IS SIGNED. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

3829

Signature block:

(-- signature stored on file --)

Contract: [SHA] 423fc044d00cc9a22465a1d38ee5f82985dc3ee4
ACH Authorization: [SHA] c2d4f5943906c501f023e321254bff311200ab1a

CashNetUSA Signature block:
Signed at: 02:35 AM on July 17, 2009
Signed by: Timothy Ho, President, CashNetUSA

[SHA] 26835b24fc4d5bba091f0513183f5f3e43f67d4c(*** VERIFIED ****)
[SHA] 423fe044d00cc9a22465e1d38ee5f82985dc3ee4
Signed Contract

# PROMISSORY NOTE, LOAN AGREEMENT AND FEDERAL TRUTH-IN-LENDING DISCLOSURES

| | |
|---|---|
| Disbursement Date: Jul 17 2009<br>Payment Date: Jul 31 2009 | Account #: 12607700<br>Loan #: 12607700-6<br>Type of Contract: Extension of Loan #26273076 |
| **LICENSED LENDER'S OFFICE:**<br><br>NCP Finance Limited Partnership<br>100 East Third Street, 5th floor<br>Dayton, OH 45402 | **BORROWER:**<br><br>NCP Finance Limited Partnership<br>Daniel Duane Ferry<br>1014 Fairlawn Dr<br><br>Duncanville, TX 75116<br>19722965576, 18172250881 |

In this Promissory Note, Loan Agreement and Federal Truth-in-Lending Disclosures (this "Note and Loan Agreement"), the words "you" and "your" mean the borrower who has signed it. The words "we", "us" and "our" mean the Lender, NCP Finance Limited Partnership, an Ohio limited partnership. "CSO" means Cash America Net of Texas, LLC, 200 W. Jackson Blvd, Suite 2400, Chicago, IL 60606, with whom you have entered into a Credit Services Contract (the "CSO Contract").

**FEDERAL TRUTH IN LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 664.29% | $331.23 | $1300.00 | $1631.23 |

Your Payment Schedule will be:

One Payment in the Amount of $1631.23 is due July 31, 2009

**Security:** You are giving us a security interest in the ECHECK/ACH Authorization.

**Late Fee:** The greater of 5% of the payment amount due or $7.50 if payment is in default for a period of 10 days or more.

**Prepayment:** If you pay off early, you will not be entitled to a refund of any portion of the finance charge. See the terms below for additional information about nonpayment, default, any required repayment in full before the scheduled due date, and prepayment refunds and penalties.

**Itemization of Amount Financed:**

| | |
|---|---|
| Amount given directly to you: | $0.00 |
| Plus: Amount credited to your account with us: | $1300.00 |
| Plus: Amount paid on your behalf to CSO (prepaid finance charge): | $325.00 |
| Equals: Principal Loan Amount: | $1625.00 |
| Less: Prepaid Finance Charge: | $325.00 |
| Equals: Amount Financed: | $1300.00 |

**PROMISSORY NOTE AND LOAN AGREEMENT**

**PROMISE TO PAY:** You promise to pay us, or to our order, the principal sum of $1300.00 in cash, plus interest from the Disbursement Date of this loan at the rate of 10% per year until this loan is paid in full. Interest accrues on a daily basis. You also promise to pay us all other charges provided under this Note and Loan Agreement. As further described herein, you agree to make the scheduled payment directly to CSO, the servicer of this Note and Loan Agreement, by ECheck/ACH.

**INTEREST:** Beginning on the Disbursement Date, interest will accrue on the unpaid principal balance of the loan until it is paid in full. For interest calculation, the accrual method will determine the number of days in a year. The interest rate and other charges under this Note and Loan Agreement will never exceed the highest rate or charge allowed by law for this loan. If the amount collected is found to exceed the highest rate or charge allowed, Lender will refund an amount necessary to comply with the law.

**SECURITY INTEREST:** You grant us a security interest in your ECheck/ACH Authorization in the amount of the Total of Payments (the "ECheck/ACH") which we may negotiate on the Payment Date or thereafter. Pursuant to Comment 2(a)(25) of the Federal Reserve Board Official Staff Commentary to Regulation Z 226.2, we have disclosed to you that our interest in the ECheck/ACH Authorization is a security interest for Truth-in-Lending purposes only, because federal and Texas law do not clearly address whether our interest in the ECheck/ACH Authorization is a "security interest."

**PAYMENTS:** All payments will be applied first to any interest, then to principal, and finally to any fees or other charges you owe other than principal and interest. Pursuant to the ECheck/ACH Authorization, you have directed us to initiate an ECheck/ACH debit entry to your bank account for the Total of Payments on the Payment Date or thereafter and for certain fees that may be assessed in the event of dishonor when presentment is made to your bank on your ECheck/ACH Authorization.

In order to complete your transaction with us, you must electronically sign this Note and Loan Agreement by clicking the "I Agree" button at the end of the Note and Loan Agreement, as well as all other "I Agree" buttons that appear within the Note and Loan Agreement. We will then approve or deny the Note and Loan Agreement. If this Note and Loan Agreement is approved, it will be consummated as of July 17, 2009. We will use commercially reasonable efforts to effect a credit entry by depositing the proceeds from this Note and Loan Agreement into the bank account listed below in the ECheck/ACH Authorization ("Your Bank Account") on the Disbursement Date above. Unavoidable delays as a result of bank holidays, the processing schedule of your individual bank, the untimely receipt of pay stubs, if such pay stubs are required, inadvertent processing errors, "acts of God", and/or "acts of terror" may extend the time for the deposit. In the event that the disbursement is delayed, the Disbursement Date will automatically adjust to reflect the date when proceeds entered your Bank Account. If there is a delay in disbursement, we will email you a confidential written notice to the email address provided in your application advising you of the delay and of the adjusted annual percentage rate, as well as any other material changes in the terms of the loan that may be caused by the delay. After the notice is sent to you, you will have the option of rescinding the Loan in accordance with the "RESCISSION" provision listed below, which describes, among other things, the time and manner within which notice of rescission must be given to be effective. Failure to give such notice as and when set out in the "RESCISSION" provision will be deemed to constitute acceptance by you of the delayed disbursement date and the revised terms of the Loan Agreement.

**CONSENT TO ELECTRONIC COMMUNICATIONS**

The following terms and conditions govern electronic communications in connection with this Note and Loan Agreement and the transaction evidenced hereby (the "Consent"). By electronically signing this Note and Loan Agreement by clicking the "I AGREE" button below, you are confirming that you have agreed to the terms and conditions of the Consent and that you have downloaded or printed a copy of this Consent for your records. You agree that:

- Any disclosure, notice, record or other type of information that is provided to you in connection with your transaction with us, including but not limited to, this Loan Agreement, this Consent, the Truth in Lending disclosures set forth below, change-in-term notices, fee and transaction information, statements, delayed disbursement letters, notices of adverse action, state mandated brochures and disclosures, and transaction information ("Communications"), may be sent to you electronically by posting the information at the CSO's web site, www.cashnetusa.com, or by sending it to you by e-mail.
- We will not be obligated to provide any Communication to you in paper form unless you specifically request us to do so.
- You may obtain a copy of any Communication by contacting us at 200 W. Jackson Blvd., 24th Floor, Chicago, IL 60606, or by calling us at 888.801.9075. You also can withdraw your consent to ongoing electronic communications in the same manner, and ask that they be sent to you in paper or non-electronic form. If you choose to receive Communications in paper or non-electronic form, we may elect to terminate this Note and Loan Agreement and demand payment of the amount then due by the date of your withdrawal of consent; or by the expiration of any minimum term mandated by law, whichever is later.
- You agree to provide us with your current e-mail address for notices at the address or phone number indicated above. If your e-mail address changes, you must send us a notice of the new address by writing to us or sending us an e-mail, using secure messaging, at least five (5) days before the change.
- In order to receive electronic communications in connection with this transaction, you will need a working connection to the Internet. Your browser must support the Secure Sockets Layer (SSL) protocol. SSL provides a secure channel to send and receive data over the Internet through 115 encryption capabilities. Netscape 4.7+ and above and Microsoft Internet Explorer 5.01+ and above support this feature. You will also need either a printer connected to your computer to print disclosures/notices or sufficient hard drive space available to save the information (e.g., 1 megabyte or more). To download transaction information into Quicken or Microsoft Money, you will need the equipment and software required by their respective operating instructions. We do not provide ISP services. You must have your own Internet service provider.
- We may amend (add to, delete or change) these terms by providing you with advance notice.

By electronically signing this Note and Loan Agreement by clicking the "I Agree" button below, you are confirming that: (1) your system meets the requirements set forth above; (2) you agree to receive Communications electronically; and (3) you are able to access and print or store information presented at this website.

**ECHECK/ACH AUTHORIZATION:** You hereby voluntarily authorize us, and our successors and assigns, to initiate an automatic credit and debit entry to your bank account ("Your Bank Account"): Name of bank and state: NEIGHBORHOOD CREDIT UNION , TX; Account type: Checking; Bank routing and transit number ▮▮▮▮ and Account Number ▮▮▮▮

You agree that we will initiate an ECheck/ACH debit entry to Your Bank Account for the Total of Payments on the Payment Date, and re-initiate a debit entry for the same amount if the ECheck/ACH is dishonored.

If there are insufficient funds on deposit in Your Account to effect an ECheck/ACH debit entry on the Payment Date, you agree to pay us a $30.00 NSF charge, which we may collect via ECheck/ACH debit entry to Your Bank Account. You voluntarily authorize us, and our successors and assigns, to initiate a debit entry to Your Bank Account for payment of this fee.

You authorize us to verify all of the information that you have provided, including past and/or current information. You agree that the debit entry authorized herein is for repayment of a single payment loan and shall not recur at substantially regular intervals. If there is any missing or erroneous information in or with your loan application regarding your bank, bank routing and transit number, or account number, then you authorize us to verify and correct such information. You agree that this ECheck/ACH Authorization is subject to our approving the Note and Loan Agreement.

**Your ECheck**

Daniel Duane Ferry
1014 Fairlawn Dr; , Duncanville, TX 75116
1972296576
1817225088
NEIGHBORHOOD CREDIT UNION
641 YORKTOWN, DALLAS, TX 75208
July 31, 2009
Pay to the order of: NCP Finance Limited Partnership
$1631.23
one thousand six hundred thirty-one dollars and 23 / 100
For: Repayment of Loan: #26367162
Daniel Duane Ferry

The ECheck/ACH Authorizations set forth in this Note and Loan Agreement are to remain in full force and effect for this transaction until your indebtedness to us for up to the Total of Payments, plus any NSF fee incurred, is fully satisfied. You may only revoke the above authorizations by contacting us directly, and only after you have satisfied your indebtedness to us.

**SEPARATE PAYMENT OF THIRD-PARTY FEES:** In connection with any third-party fees such as fees for loan brokerage and other credit services, you acknowledge the following: You separately entered into the CSO Contract with Cash America Net of Texas, LLC ("CSO") to provide you with brokerage or other credit services and you agreed to pay Cash America Net of Texas, LLC a fee for those services. You are responsible for such fee and you are voluntarily using part of the proceeds from this loan to pay said fee. You understand that we are making this loan under Section 302.001 of the Texas Finance Code at a rate of interest not greater than 10% per annum and that the fee paid to CSO for arranging this loan (though required to be treated as finance charge for purposes of federal law disclosures) is for a separate service and is not interest for purposes of Texas law. You understand that your fee to CSO shown in the Itemization of Amount Financed must be paid directly to CSO and that none of that fee will be paid to us.

**RESCISSION:** You may rescind future payment obligations under this Note and Loan Agreement, without cost or finance charges, no later than midnight, Central Time of the third day immediately following the Disbursement Date ("Rescission Deadline"). To rescind future payment obligations on this loan, you must inform us in writing, by or before the Rescission Deadline, either by email to support@cashnetusa.com or by fax to 866.326.5265, that you want to cancel the future payment obligations on this loan and that you authorize us to effect a debit entry to Your Account for the principal amount of Note and Loan Agreement. In the event that we timely receive your written notice of rescission on or before the Rescission Deadline but before the loan proceeds have been credited to Your Account, we will not effect a debit entry to Your Account and both ours and your obligations under this Note and Loan Agreement will be rescinded. In the event that we timely receive your written notice of rescission on or before the Rescission Deadline but after the loan proceeds have been credited to Your Account, we will effect a debit to Your Account for the principal amount of the loan as shown in this Note and Loan Agreement. If we receive payment of the principal amount via the debit, our and your obligations under this Note and Loan Agreement will be rescinded. If we do not receive payment of the principal amount via the debit, then the Note and Loan Agreement will remain in full force and effect.

**PREPAYMENT:** At any time after the Rescission Deadline defined above, you can prepay your obligations partially or in full before the Payment Date by sending us an email or fax to the address and number referenced above informing us that you want to make a prepayment and giving us written authorization to effect a debit entry to Your Account for the prepayment. If we receive the prepayment via the debit, it will be applied first to interest, then principal, and finally to any fees other than principal and interest. Please be advised that paying your loan off early will not result in a refund of the any portion of your Finance Charge.

**ASSIGNMENT AND EXECUTION:** We may assign or transfer this Note and Loan Agreement or any of our rights hereunder. If we approve this, then you agree that the electronically signed Note and Loan Agreement we receive from you will be considered the original executed Note and Loan Agreement, which is binding and enforceable as to both parties.

**BORROWER'S REPRESENTATIONS:** You represent and warrant to us that (i) all statements made in your most recent loan application remain true, complete and correct as of the date hereof, (ii) the checking account listed in your most recent application is open, in your name, and you will not close such account so long as this Note and Loan Agreement is outstanding, and (iii) you have entered into the CSO Contract with CSO pursuant to which, among other things, CSO agrees to guarantee the payment of the principal amount of this Note and Loan Agreement and accrued interest and fees as of the date of your default. You further represent and warrant that you are not in voluntary or involuntary bankruptcy and you are not anticipating filing a bankruptcy proceeding of any type. You understand that we will be making this loan solely in reliance on the truth of these representations.

**DEFAULT AND LENDER'S RIGHTS:** If you (a) fail to make any payment when due, (b) make any statement or representation about yourself, your employment or your financial condition which is false, (c) stop payment on the ECHECK/ACH or otherwise cause the ECHECK/ACH not to be honored on or after the presentment date or (d) fail to keep some other promise or agreement you have made to us in this Note and Loan Agreement, you will be in default under this Note and Loan Agreement. Additionally, you acknowledge and agree that if CSO, regardless of reason, revokes or cancels its guaranty or otherwise ceases to guaranty payment of this Note and Loan Agreement, you will be in default under this Note and Loan Agreement. Upon default, we may declare the entire unpaid balance of this Note and Loan Agreement and all accrued unpaid interest and any other charges permitted by law on this Note and Loan Agreement immediately due, and then you will pay that amount. We may also collect immediately all monies held or controlled by CSO for your benefit, including, but not limited to all fees that you pay CSO and all monies which CSO may owe you, and apply those monies to your indebtedness under the Note and Loan Agreement. In addition, you will have to pay the loan according to its original terms even if you and us agree to renew or extend it for any length of time or revise its terms. You consent to any extension of time or other accommodation that we may make that in any way suspends our remedies or rights, and agree that our remedies or rights are not thereby impaired. To the extent permitted by law, you will pay the collection costs and attorney's fees incurred in connection with the referral of this loan to an attorney and/or collection agency to collect this loan after default.

Following a default or bankruptcy, please direct all correspondence to Lender in care of CashNetUSA at 200 West Jackson Blvd., Suite 2400, Chicago, IL 60606, (888) 801-9075.

**RIGHT OF OFFSET:** You acknowledge and agree that we or any holder of this Note and Loan Agreement shall have the right to offset, against the obligation to pay amounts to you, any outstanding amounts you then owe to us or the holder of this Note and Loan Agreement.

**CREDIT SERVICES ORGANIZATION:** You acknowledge that we have entered into a contract with CSO to assist with this loan transaction. Neither CSO, nor any of its affiliates (collectively "Cash America"), is owned by, operated by, or affiliated with us. Cash America does not have authority to make or renew loans of the kind reflected in this Note and Loan Agreement in Texas. Cash America is not providing you with any advice or counseling as to your personal financial situation or credit needs. You may call the Consumer Credit Hotline or write for credit information or assistance with credit problems. Office of Consumer Credit Commissioner, 2601 North Lamar Boulevard, Austin, Texas 78705-4207, (512) 936-7600, (800) 538-1579.

**SUCCESSORS AND ASSIGNS:** This Note and Loan Agreement is binding upon your heirs and personal representatives in probate and upon anyone to whom you assign your assets or who succeeds you in any other way.

**PROCEDURES FOR OPENING A NEW ACCOUNT:** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. This means that when you open an account with us, we will ask for your name, address, date of birth, and other information that will allow us to identify you.

**SEVERABILITY:** If any provision of this Note and Loan Agreement, including any provision of the Arbitration and Waiver of Jury Trial Agreement, is held invalid or unenforceable, such provision will be considered changed to the extent necessary to comply with law, and the validity or enforceability of any other provision will not be affected; provided, however, that if a class action litigation or a class-wide arbitration is permitted for any reason with respect to any dispute, either party may require that the entire dispute be heard by a judge, sitting without a jury, under applicable court rules and procedures.

**GOVERNING LAW:** This Note and Loan Agreement will be governed by the laws of the State of Texas, except that the arbitration provision will be governed by the Federal Arbitration Act ("FAA").

### ARBITRATION PROVISION

Arbitration is a process in which persons with a dispute(s): (a) agree to submit their dispute(s) to a neutral third person (an "arbitrator") for a decision; and (b) waive their rights to file a lawsuit in court to resolve their dispute(s). Each party to the dispute(s) has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute(s), which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:

**Scope.** For purposes of this Arbitration Provision the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement (including the Arbitration Provision), the information you gave us before entering into this Agreement, including your application, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts, (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all data breach or privacy claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

**Court and Class Action Waivers.** You acknowledge and agree that by entering into this Arbitration Provision:

(a) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A COURT OF LIMITED JURISDICTION (e.g., small claims court), RESOLVE ANY DISPUTE ALLEGED AGAINST US

https://portal.cashnetusa.com/contract/26367162

1/21/2010

OR RELATED THIRD PARTIES; and

(b) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

**No Class Arbitration.** Except as provided in the Small Claim Disputes paragraph below, all disputes, including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION. THE ARBITRATOR SHALL ALSO NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

**Process.** Any party to a dispute, including related third parties, may send the other party written notice by certified mail return receipt requested of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to the arbitrator's rules. If you demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within 20 days in writing by certified mail return receipt requested of your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to the dispute will be governed by the rules and procedures of the arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of this Agreement, including the Arbitration Provision. You may get a copy of the rules and procedures by contacting the arbitration organization listed above.

**Fees/Awards/Appeals.** Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing and arbitrator's fees ("Arbitration Fees"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the FAA, and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, in the county where this Agreement was signed, or in such other place as ordered by the arbitrator or required by law. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision in your favor awarding monetary damages and the award is less than the maximum amount allowed to be awarded in the state's court of limited jurisdiction, then your award will be automatically increased to $100 more than that maximum amount. Regardless of whether the arbitrator renders a decision or an award in your favor resolving the dispute, you will not be responsible for reimbursing us for your portion of the Arbitration Fees. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction. Either party may appeal the arbitrator's decision within 30 days to a single arbitrator or a three-arbitrator panel from the same arbitration organization originally chosen, which shall review the award *de novo* (without regard to the original decision). If you decide to appeal the decision to a single arbitrator, then we will pay your portion of the Arbitration Fees associated with the appeal. If you decide to appeal the decision to a three-arbitrator panel, then you will be responsible for paying the difference in Arbitration Fees between a single arbitrator and a three-arbitrator panel.

**Small Claim Disputes.** All parties, including related third parties, shall retain the right to seek adjudication in the state's court of limited jurisdiction for disputes within the scope of that court's jurisdiction. Any dispute, which cannot be adjudicated in that court, shall be resolved by binding arbitration. Any appeal of a judgment from that court shall be resolved by binding arbitration.

**Interstate Commerce.** This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Texas.

**Binding Effect.** This Arbitration Provision is binding upon and benefits you, your respective heirs, successors and assigns. The Arbitration Provision is binding upon and benefits us, our successors and assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been prepaid, paid or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

**Severability.** If any portion of this Arbitration Provision is deemed invalid or unenforceable, it will not invalidate the remaining portions of the Arbitration Provision, unless the provision precluding the arbitrator from conducting a class arbitration as set forth in the No Class Arbitration paragraph is deemed invalid or unenforceable, in which case this entire Arbitration Provision shall be deemed void.

**OPT-OUT PROCESS.** You may choose to opt out of this Arbitration Provision but only by following the process set forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing postmarked within fifteen (15) calendar days of the date of this Agreement at the following address: Cash America Net of Texas, Attn: General Counsel, 1600 W. 7th Street, Fort Worth, Texas 76102. Your written notice must include your name, address, social security number, the date of this Agreement, a statement that you wish to opt out of the Arbitration Provision and must not be sent with any other correspondence. Indicating your desire to opt-out of this Arbitration Provision in any manner other than as provided above is insufficient notice. Your decision to opt out of this Arbitration Provision will not affect your other rights or responsibilities under this Agreement, and applies only to this Arbitration Provision and no prior or subsequent Arbitration Provision to which you and we have agreed.

## LENDER PRIVACY POLICY

You acknowledge and agree that Lender may collect "nonpublic personal information" about you from the following sources:

- Information received from you on applications, loan documents, or other forms, such as your name, address, social security number, assets and income;
- Information about your transactions with Lender, its affiliates or others, such as payment history and loan balances; and
- Information Lender receives from third parties, such as consumer reporting agencies and other lenders, regarding creditworthiness and credit history.

"Nonpublic personal information" is information Lender obtains in connection with providing you with financial services including, but not limited to, short term loans. Examples of nonpublic personal information include your name, social security number, payment history, and credit reports.

Lender does not disclose any nonpublic personal information about its customers or former customers to anyone except its affiliates, as permitted by law or if the customer authorizes said release in writing. Lender's employees are bound by this Privacy Policy and are educated on implementing Lender's privacy and information security policies. Only employees actively engaged in their assigned duties are authorized to access or use customer information. Lender maintains physical, electronic, and procedural safeguards to comply with federal standards to store and secure information about you.

# NOTICE OF CANCELLATION

You, the customer, may cancel this contract, without any penalty or obligation, within three days from the date the contract is signed.

If you, the customer, cancel this contract, any payment made by you under this contract must be returned within 10 days following receipt by Cash America Net of Texas, LLC of your cancellation notice.

To cancel this contract, mail or deliver a signed dated copy of this cancellation notice, or any other written notice to: Cash America Net of Texas, LLC at 200 West Jackson Street, Suite 2400, Chicago, IL 60606 not later than midnight July 20, 2009.

I hereby cancel this transaction.

Customer Name: Daniel Duane Ferry

Contract Date: July 17, 2009

Date: _____

Customer's Signature

Print Name: _____

3829

Signature block:

(-- signature stored on file --)

Contract: {SHA} d3b3b52a4d86de1dac0fe6d84c6f35b2de24012c
ACH Authorization: {SHA} c2d4f5943906c501f023e321254bff311200eb1a

CashNetUSA Signature block:
  Signed at: 02:35 AM on July 17, 2009
  Signed by: Timothy Ho, President, CashNetUSA

{SHA} ce0dc627e0f52d0ba8dc9197cf948e54ef8c6005{*** VERIFIED ****}
{SHA} d3b3b52a4d86de1dac0fe6d84c6f35b2de24012c
—Signed Contract—

Congratulations! You have reached your last step in the loan process. Please sign the loan proceeds voucher below, and we will make the necessary arrangements with the lender to have your loan funded in accordance with the Loan Agreement.

NCP Finance Limited Partnership

Date: July 17, 2009          No. 26367162
ON DEMAND
Pay to the Order of Daniel Duane Ferry          $1300.00
FOR PROCEEDS OF < NCP Finance Limited Partnership > BROKERED LOAN NUMBER: 26367162

Value Received and Charge the Same to Account of
NCP Finance Limited Partnership
100 East Third Street, 5th Floor
Dayton, OH 45402

NCP Finance Limited Partnership
100 East Third Street, 5th Floor
Dayton, OH 45402
By: NMCapital, Inc.,
its Managing Member
By: Lee Schear,
President

NCP Finance Limited Partnership

3829

Signature block:

(-- signature stored on file --)

Contract: {SHA} b1bf7707879f6d56d8958a0a7e315724f258ee14
ACH Authorization: {SHA} c2d4f5943906c501f023e321254bff311200eb1a

CashNetUSA Signature block:
  Signed at: 02:42 AM on July 03, 2009
  Signed by: Timothy Ho, President, CashNetUSA

{*** VERIFIED ****}
{SHA} b1bf7707879f6d56d8958a0a7e315724f258ee14